ConuiNS, Judge,
delivered the opinion of the court:
In June 1956, the Department of the Army awarded to plaintiff a contract for the installation of heating and lighting systems in four maintenance shops.[1] Plaintiff’s bid was the only one submitted. After the contract had been awarded, plaintiff discovered that, in computing his bid, he had overlooked the item of ceilings. The Government insisted that plaintiff install the ceilings, and ultimately he did so.[2]
After the work had been completed, plaintiff submitted to the contracting officer a claim for $4,039.79 which, according to plaintiff, represented the cost of installing the ceilings and the insulation. Plaintiff’s request for additional payment was forwarded to the General Accounting Office. The GAO accepted the recommendation of the contracting officer that plaintiff’s claim be allowed to the extent of $1,865.60, and this amount was paid to him.
*296 In the present action, plaintiff asserts that the disputed work cost $3,549.50. He seeks to recover $1,683.90, the difference between bis alleged costs and the amount received from the GAO. We conclude, for reasons to be explained, that plaintiff’s claim must be denied.
Plaintiff asserts that the error in his bid was due partly to his negligence and partly to negligence on the part of the Government. Therefore, according to plaintiff, he is entitled to recover the cost of installing the ceilings and the insulation. It is plaintiff’s position that he received from the Government an incomplete set of specifications; i.e., that the last two pages, the ones which pertained to ceilings, had been omitted. Although defendant suggests that it was plaintiff who mislaid the last two pages, we can accept, as did Commissioner Day, the view of plaintiff regarding this matter.
The crucial fact is that, even without the pertinent sections of the specifications, the contract clearly indicated that ceilings were required. First, one of the contract drawings included detailed illustrations of ceiling components. This drawing in itself should have made obvious to plaintiff the fact that installation of ceilings was required.[3] Secondly, the section entitled “Work To Be Done” expressly called for “installation of ceilings.” (See finding 7, infra.) In view of these provisions, there is no basis for attributing to the Government any part of the responsibility for plaintiff’s error in bidding. We find that, under the facts of this case, plaintiff himself must bear full responsibility.[4] Cf. Russell & Pugh Lumber Co. v. United States, 154 Ct. Cl. 122, 127, 290 F. 2d 938 (1961).
The General Accounting Office, which determined that plaintiff was entitled to some reimbursement, paid to him an amount which the GAO and the contracting officer considered to be a reasonable approximation of plaintiff’s additional *297 costs. Under the circumstances, this adjustment was certainly fair, and the fact that plaintiff received it is an additional reason for denying his claim for further compensation.
We hold that plaintiff is not entitled to recover. The petition is dismissed.
BINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. Commonwealth Engineering Company, P.O. Box 1087, N. Station, Arlington, Virginia, is wholly owned by Richard Root Cover, who is referred to hereinafter as plaintiff.
2. On June 1, 1956, the defendant, through the Department of the Army, Quartermaster Activities, Cameron Station, Alexandria, Virginia, invited bids for the installation of heating and lighting systems in prefabricated metal motor maintenance shops at four (4) National Guard AAA gun sites in nearby Virginia, within the military District of Washington.
3. The plaintiff submitted his bid and was awarded a contract dated June 15,1956, No. DA44-109 QM 2080 at a contract price of $5,284 for the performance of the work. On the above date, the contracting officer wrote to the plaintiff notifying him of the award of the contract and advising that a formal contract would be prepared for execution by the parties (which was later accomplished), and that notice to proceed would be given when the formal contract was forwarded for execution. The notice to proceed was thereafter given, with work to begin 15 days from June 20 and to be completed 60 days from that date, or on August 19, 1956.
4. By July 1, 1956, the plaintiff had discovered that he had overlooked an item of ceilings (which required the installation of 2 x 4 wood joists in buildings 20 feet wide by 48 feet long) in computing the bid which formed the basis of the contract price. The discovery of such mistake was communicated to the contracting officer on that day.
5. The contracting officer in reply advised the plaintiff that the specifications were quite clear in requiring the in *298 stallation of the ceilings. He further advised that, since no other bids had been received by the defendant, it had not been possible to compare the plaintiff’s bid with others, and that the 'bid price did not appear so unreasonably low as to indicate to him that an error had been made. He further said that the award had been made in good faith to the plaintiff, thus implying that when making the award, he had no information upon which to conclude that the plaintiff’s bid was the result of an error on the part of the plaintiff.
16. Shortly thereafter, the plaintiff conferred with the contracting officer concerning the mistake. He told the contracting officer that he had not received a complete set of specifications, in that the last two pages thereof were missing.
That the plaintiff did not include any computation concerning the ceiling item is corroborated by reference to the plaintiff’s original work papers which are in evidence as plaintiff’s Exhibit 15. It may fairly be inferred from the record that the plaintiff was correct in his statement as to having received an incomplete set of specifications.
■7. The contract which the plaintiff signed did contain a complete set of specifications. They contained a cover sheet which reads as follows:
DEPAETMENT OF THE AEMY SPECIFICATIONS FOE HEATING SYSTEM, HOEIZONTAL, PEESSUEE ATOMIZING TYPE, OIL BUENEE YrAEM AIE UNIT HEATEE AND LIGHTING OF MOTOE POOL PEEFABS AT NATIONAL GUAED AAA GUN SITES NOS. 17,18, 22 & 23 LOCATED IN VIRGINIA C.S. SPECIFICATION NO. 27-56 EEV-1.
The specifications were broken down into four parts, STATEMENT OF WOEK, GENEEAL CONDITIONS, SPECIAL CONDITIONS and TECHNICAL SPECIFICATIONS.
The pagination of the contract specifications was such that when the last two pages were detached, the specifications did not appear to be incomplete. There was no reference at the beginning or on the cover sheet indicating the total number of pages in the complete specifications.
The last two pages of the specifications contained all of the detail concerning the installation of ceilings excepting that *299 which appeared on one of the contract drawings. PART I, STATEMENT OF WORK, which appeared immediately following the cover sheet, contained three references to ceilings. So that these references may be observed in context, the full description of the work as shown thereon is quoted below:
PART I
STATEMENT OP WORK
DESCRIPTION op Work :
(A) Work to be done : All work to be performed under these specifications shall consist of furnishing all necessary labor, tools, equipment, materials, fuels, power, transportation, (except any materials, equipment, fuels, power, transportation, if any specified herein to be furnished by the Government), and perform all work for furnishing and installing 4 horizontal heaters, lighting and installation of ceilings and electric service as specified herein.
In strict accordance with these specifications and subject to the terms and conditions of the contract the work shall be complete and all work, material, and services not expressly called for in the specifications or not shown specifically in the appropriate drawings, necessary for complete and proper construction to carry out the contract in good faith, shall be performed, furnished and installed by the contractor at no increase in cost to the Government.
(B) Location: The site of the work called for in these specifications is located at: SEE SCHEDULE OF SITES.
(C) Drawings : The following drawings form a part of these specifications:
Drawing No. Date Title
M-l-14 Apr 64 Oil-Fired-Horizontal Warm Air Furnace
SK-169_24 Apr 56 Motor Pool-Typical N.G. AAA Gun
Sites #17, 18, 22 and 23 Lighting & GeiMng Details
(D) Schedule oe Sites:
Site No. No. Beaters Required,
17-1
18_ - 1
22_ - 1
23_ - 1
Ceiling in Motor Pool Building at each site.
Lighting in Motor Pool Building at each site.
[Italics supplied.]
*300 8. As may be seen from the preceding finding, there are only two drawings relating to the work under the contract in suit. The plaintiff had both drawings before him when computing his bid. One of the drawings, No. SK-169, clearly showed the ceiling details as well as those relating to lighting of the buildings.
9. The contract also contained the usual Standard Form 23A, General Provisions Construction Contracts (March 1953) relating to Specifications and Drawings, as well as Disputes.
10. One of the four buildings in which the plaintiff was to and did install heating and lighting under the contract in suit was of the quonset (curved or arched roof) type, materially differing from that shown on the drawings. Apparently this caused the parties to conclude that the installation of a ceiling of the type shown on the drawings was not feasible. Though no change order is in evidence, the plaintiff installed, at the direction of the contracting officer, an insulating material next to the metal roof of this building. No ceiling was installed in this quonset-type building.
11. After the plaintiff had finished the contract work less ceilings, the proof indicates that the plaintiff stopped work since “* * * it was not feasible to go any further until the matter was cleared * * The contracting officer accordingly contacted the plaintiff’s bonding company referring to possible termination of the plaintiff’s contract for default. Thereafter, the plaintiff did install ceilings according to the contract specifications and drawings in three of the buildings. He also installed the insulation in the quonset-type building.
12. On December 10, 1956, after the ceilings had been installed in the three 'buildings and the insulation in lieu of the ceiling was installed in the quonset-type building, the plaintiff submitted a request to the contracting officer for payment of the balance of the contract price then unpaid and in addition, the sum of $4,039.79 for the work involved in the three ceilings and one insulation installation. The contracting officer was advised that the plaintiff’s formal claim for the ceilings and insulation would be forwarded in *301 a few days. On December 22, 1956, the formal claim referred to was sent to the contracting officer. It is not in evidence. It was sent to the General Accounting Office. On the basis of the plaintiff’s claim to the contracting officer and a report by that official to the General Apcounting Office recommending a payment to the plaintiff of $1,865.60 hi addition to the contract price, the Comptroller General on April 8, 1957, certified that additional amoimt for payment to the plaintiff and it has since been paid to the plaintiff.
13. The plaintiff on June 3, 1957, requested the Comptroller General to reexamine the claim. On August 14,1957, the plaintiff was advised of the adverse action upon plaintiff’s claim for an additional amount, being the difference between $4,039.79 and $1,865.60, after it had been reconsidered in detail by the Comptroller General. The Comptroller General’s letter reads in part as follows:
The claim arose as a result of your failure to include in your proposal the cost of erecting ceilings, among other items being installed in the four buildings covered by the above contract. Upon completion of the work it was determined by the contracting officer that you had made a bona -fide error in omitting the cost for su,ch work equal to $1,865.60. We concurred v/ith the finding that as a matter of law you were entitled to reimbursement of an amount deemed to be fair and reasonable for such additional costs, and therefore authorized payment of the above amount so determined by the contracting officer.
It is clear from the record that the error in bidding made by the plaintiff was due to the fault of the plaintiff, not contributed to in any way by any action of the contracting officer. Although in later communications plaintiff took a contrary view, his letter of July 1, 1956, stated: “I am sorry that this mistake has been made and it is entirely my error.”
14. Plaintiff has been paid the full contract price of $5,284, and in addition the sum of $1,865.60, which the contracting officer found to be the equitable adjustment due to the plaintiff as a result of the mistake, which he had found to be a “* * * bona fide error in omitting the cost for such work * *
*302 CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.

 Actually, the contract was av,'arded to Commonwealth Engineering Company, the sole owner of which is plaintiff Cover.

 Ceilings were installed in three of the buildings. In the fourth, which was a quonset building, plaintiff installed insulating material rather than a ceiling.

 As defendant points out, the contract contained the following provision: <•* * * Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. * * *”

 The present case differs materially from Virginia Eng’r Co. v. United, States, 101 Ct. Cl. 516 (1944), and Shepard v. United States, 95 Ct. Cl. 407 (1942). As plaintiff asserts, these cases stand for the general proposition that, when a misunderstanding results from carelessness by both parties to a contract, neither should benefit at the expense of the other. For the reasons indicated above, this rule is inapplicable to the present case.